IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JESUS CHRIST IS THE ANSWER     *
MINISTRIES, INC., *et al.*,

                       *

     Plaintiffs,                     Civil Action No. RDB-17-3010

                       *

     v.

                       *

BALTIMORE COUNTY, *et al.*,

                       *

     Defendants.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

In the Fall of 2012, Plaintiff Reverend Lucy Ware ("Ware") began improvements on a single-dwelling home to convert it to a house of worship for Jesus Christ is the Answer Ministries, Inc. ("the Church") (collectively, "Plaintiffs"). Upon learning that the improvements did not comply with the Baltimore County Zoning Regulations ("BCZR"), she filed a Petition for a Special Hearing and zoning variances with the Defendant Board of Appeals of Baltimore County ("the Board") to approve a site plan for the Church. The Board denied the Petition, finding in part that the plan did not minimally comply to the extent possible with certain BCZR requirements. On appeal to the Circuit Court for Baltimore County and then ultimately to the Maryland Court of Special Appeals, the Board's findings were affirmed. While the appeal was pending, Ware filed a second Petition which the Board ultimately denied on September 13, 2017 on the basis of *res judicata*.

One month later, Plaintiffs filed suit in this Court against the Board and Baltimore County, Maryland (collectively, "Defendants") stemming from the denial of the second petition. Plaintiffs allege violations of the Religious Land Use and Institutionalized Persons

Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* (Counts I and II); the Free Exercise

Clause of the First Amendment to the U.S. Constitution (Count IV); the Equal Protection

Clause of the Fourteenth Amendment to the U.S. Constitution (Count V); Article 36 of the

Maryland Declaration of Rights (Count VII); and seek judicial review of the Board's

September 13, 2017 Opinion and Order (Count IX).[1] Currently pending before this Court is

Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.[2] (ECF No.

10.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule

105.6 (D. Md. 2016). For the following reasons, Defendants' Motion to Dismiss or, in the

alternative, for Summary Judgment, construed as a Motion to Dismiss (ECF No. 10), is

GRANTED and Plaintiffs' claims are DISMISSED.

## BACKGROUND

When reviewing a motion to dismiss, this Court accepts as true the facts alleged in

the plaintiff's complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). In 1992,

Reverend Ware ("Ware"), a native of Kenya, established Jesus Christ is the Answer

Ministries, Inc. (the "Church") in Baltimore, Maryland. (Compl., ECF No. 1 at ¶¶ 12-13.)

The Church is a nondenominational, multicultural Christian church with associated churches

in Kenya and Seychelles. (*Id.* at ¶¶ 15, 18-19.) According to the Complaint, ten years later in

2002, the Church consisted of ten or less members. (*Id.* at ¶ 22.) This small group started

meeting at Ware's home in Baltimore County, Maryland. (*Id.* at ¶ 21.) Over the next ten

years, the Church grew beyond a mere ten members and met at different locations including

---

[1] The Complaint does not contain a count III, VI, or VIII.

[2] Also pending before this Court is Defendants' Motion to Drop the Board as a Defendant for Counts IV, V, VII and IX. (ECF No. 11.) As explained below, this Court grants Defendants' Motion to Dismiss all of Plaintiffs' claims, and accordingly Defendants' Motion to Drop the Board as a Defendant for Counts IV, V, VII and IX (ECF No. 11) is MOOT.

an elementary school and hotel. (*Id.* at ¶¶ 23-33.) In 2008, Ware and other Church officials

began fundraising and looking for a property for a house of worship. (*Id.* at ¶¶ 34-36.) In

August of 2012, Ware identified 4512 Old Court Road, Baltimore, Maryland (the

"Property") as a potential location, and was told by a realtor that a church was a permitted

use on the Property. (*Id.* at ¶¶ 37-38.) On August 31, 2012, Ware purchased the Property. (*Id.*

at ¶ 39.)

The Property is approximately 1.2 acres in size, and contains a 2,900 square foot

structure previously used as a home. (*Id.* at ¶ 42.) Without checking any applicable zoning

regulations, Ware converted three rooms of the dwelling into a worship area, added two

bathrooms, replaced the roof, and replaced a small deck. (*Id.* at ¶¶ 54-55.) In addition, Ware

created a new, gravel parking area at the rear of the house and planted Cypress trees to line

the new parking area. (*Id.* at ¶¶ 57-58.) In October of 2012, the Church held its first service,

a cookout, and a party. (*Id.* at ¶¶ 60-61.) Local residents subsequently complained about the

events to the County. (*Id.* at ¶ 62.) On November 8, 2012, the County informed Ware that

the Property could not be used as a church until it complied with Baltimore County Zoning

Regulations ("BCZR"). (*Id.* at ¶ 63.)

The Property is zoned "Density Residential 3.5." (*Id.* at ¶ 40.) The relevant BCZR

that apply to the Property were summarized by the Maryland Court of Special Appeals in

*Ware v. People's Counsel for Baltimore County*, 223 Md.App. 669, 117 A.3d 628 (Md. Ct. Spec.

App. 2015):

> Article 1B of the BCZR governs DR Zones in Baltimore County. A church or
> any other building used for religious worship is a use "permitted as of right" in
> a DR zone. § 1B01.1.A.3. Even a permitted use in a DR zone must comply
> with section 1B01.1.B, however, which establishes "[d]welling-type and other

supplementary use restrictions based on existing subdivision and development characteristics." One such restriction pertains to residential transition areas ("RTA"), which are buffer and screening areas. § 1B01.1.B.1. An RTA is a "one-hundred-foot area, including any public road or public right-of-way, extending from a D.R. zoned tract boundary into the site to be developed." § 1B01.1.B.1.a(1).

As relevant here, an RTA is "generated" if the property "to be developed is zoned D.R. and lies adjacent to land zoned ... D.R.3.5 [or] D.R.5.5" containing a "single-family detached ... dwelling within 150 feet of the tract boundary." § 1B01.1.B.1.b. A property owner may seek a variance from the RTA buffer requirements, but only if 1) the variance is recommended by certain County agencies *or* 2) there is a finding at a development review hearing, pursuant to Article 32, subtitle 4 of the County Code ("the Code"), that a modification to the RTA satisfies compatibility criteria and that a reduction in the RTA "will not adversely impact the residential community ... adjacent to the property to be developed." § 1B01.1.B.1.c.

An RTA "use is any use" permitted as of right or by special exception in the zone or "[a]ny [business or industrial] parking area permitted under Section 409.8.B subject to the approval of a specific landscape plan for the buffer area which must meet the requirements for a Class A plan." § 1B01.1.B.1.d.

Section 1B01.1.B.1.e establishes the "[c]onditions" in an RTA. Any single-family detached, semi-detached, or duplex dwelling is permissible within an RTA. A "parking lot" must be "set back from the tract boundary 75 feet and provide a fifty-foot RTA buffer." § 1B01.1.B.1.e(2). The "buffer" must be an "upgraded, uncleared, landscaped buffer" and may not contain drainage areas, stormwater management ponds, or accessory structures, unless otherwise directed by the hearing officer upon the recommendation of the County. § 1B01.1.B.1.e(3).

There are "[e]xceptions to residential transition" that, if applicable, eliminate the "conditions" set forth above for a proposed site plan. § 1B01.1.B.1.g. Four of the exceptions pertain to churches. As relevant here, subsection (6) excepts a "new church or other building for religious worship, the site plan for which has been approved after a public hearing in accordance with Section 500.7" if there is a finding that "the proposed improvements are planned in such a way that compliance, to the extent possible with RTA use requirements, will be maintained and that said plan can otherwise be expected to be compatible with the character and general welfare of the surrounding residential premises.

*Id.* at 673-75, 117 A.3d 628 (emphasis in original). If a petitioner requests a hearing, the Baltimore County Code also provides that a governmental entity called the "People's Counsel" may advocate a position contrary to the religious land use. (ECF No. 1 at ¶ 95.)

In response to the November 8, 2012 notice from Baltimore County, on December 21, 2012, Ware filed a Petition for a Special Hearing and zoning variances ("*Ware I*"). (*Id.* at ¶ 99.) The *Ware I* Petition sought:

1) To allow a new church for religious worship on the subject property per section 1B01.1B1g(6) (BCZR)
2) To allow a residential transition area (RTA) buffer of 0 feet in lieu of the required 50 feet per section 1B01.1B1e(5) (BCZR)
3) To allow a residential transition area (RTA) setback of 0 feet in lieu of the required 75 feet from a track boundary to a parking lot or structure per section 1B01.1B1e(5) (BCZR)

(ECF No. 10-2 at 639; ECF No. 1 at ¶¶ 100-03, 113.) Notably, item one sought approval for a site plan of a *new church* under BCZR § 1B01.1B1g(6). The *Ware I* Petition also sought variances from three parking regulations. (ECF No. 10-2 at 639; ECF No. 1 at ¶ 103.)

In January of 2013, the "People's Counsel" entered its appearance in the case. (*Id.* at ¶ 104.) On February 5, 2013, the County Director of the Department of Planning indicated that he did not oppose the petition, "provided a landscape and signage plan is submitted to the department for review and approval." (*Id.* at ¶ 105.) On February 27, 2013, a hearing was held before an Administrative Law Judge (ALJ), with People's Counsel and nearby residents, "the Protestants,"[3] present. (*Id.* at ¶¶ 104, 106-107.) During the proceeding, Plaintiffs claim

---

[3] The Maryland Court of Special has utilized this phrase "the Protestants" to designate citizens in opposition to the construction of a church. *See Ware v. People's Counsel for Baltimore County*, 223 Md. App. 669, 117 A.3d 628 (Md. Ct. Spec. App. 2015). Judge Hollander of this Court similarly used that phrase in *Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017).

that the Protestants made the following comments directed at Reverend Ware and the Church:

> [D]ancing and hollering like they are [*sic*] back at their home back in Africa somewhere. . . . She can come over here from Africa . . . branch out from another church and put all of this in our neighborhood. . . . They were out there dancing like from Africa. We don't have that in our block.

(*Id.* at ¶ 108.)

The ALJ recommended denying Ware's petition for a zoning variance, which the Board reviewed during a *de novo* hearing. (*Id.* at ¶¶ 109-111.) At that hearing, Ware and two other congregants testified in addition to an expert witness who prepared the site plan for the Property. (*Id.* at ¶¶ 112-13.) Several Protestants also testified and called an expert who testified that the site plan did not satisfy the RTA requirements and that the variances should not be granted because the hardship was self-imposed. (*Id.* at ¶¶ 114-17.) On October 9, 2013, the Board denied the petition, finding that: (1) RTA restrictions applied to the development of the Property; (2) the petition did not qualify for an exception as a new church under BCZR § 1B01.1.B.g(6) given that the site plan did not minimally comply with the RTA requirements and was not compatible with the neighborhood; and (3) given the Board's decision, the requests for parking variances were moot. (*Ware I* Opinion, ECF No. 10-2 at 75-88.) Specifically, the Board noted that "[t]he proposal is for no buffer and no setbacks," all other churches in the area, except one, were located in different density residential zones or located on corners, and all of the other churches had adequate land for parking lots which were paved and striped. (*Id.* at 84-85.)

---

The phrase "the Protestants" in this context does not refer to those of the Protestant faith, but rather refers to those citizens in opposition to the requested zoning.

On appeal to the Circuit Court for Baltimore County, the court verbally affirmed the Board's decision. (ECF No. 1 at ¶ 125.) Ware then appealed to the Maryland Court of Special Appeals. (*Id.* at ¶ 126.) While *Ware I* was progressing through its hearings and appeals, Ware filed a second Petition for Special Hearing ("*Ware II*") on October 31, 2013.[4] (*Id.* at ¶ 134.) Specifically, the *Ware II* Petition sought:

1) To approve the site plan for a proposed building for a new church pursuant to BCZR § 1B01.1B1g(6).
2) To approve an addition to a church including parking areas and driveways pursuant to BCZR § 1B01.1B1g(4).
3) For such other and further relief as may be deemed necessary by the Administrative Law Judge for Baltimore County.
4) That the submitted site plan demonstrates compliance to the extent possible with section 1B01.1B1g(6) (BCZR).

(ECF No. 10-2 at 640.) The site plan for the new church in *Ware II* called for a 50-foot buffer and for setbacks measuring 62 feet to the property to the east, 72.7 feet to the property to the north, and 55 feet to the property to the west. (ECF No. 1 at ¶¶ 138-39.) Accordingly, Plaintiffs assert that unlike *Ware I*, *Ware II* either meets or comes close to meeting the RTA setback and buffer requirements and does not request parking variances. (*Id.* at ¶¶ 132-135.)

Notably, like the *Ware I* Petition, item one of the *Ware II* Petition sought approval for a site plan of a *new church* under BCZR § 1B01.1B1g(6); the difference according to Plaintiffs being that *Ware II* does not entirely eliminate the RTA buffer and setback, but rather proposes the above described measurements. However, unlike the *Ware I* Petition, item two of the *Ware II* Petition sought to add an addition to an *existing church* under BCZR §

---

[4] Plaintiffs initially filed *Ware II* on September 11, 2013, but subsequently amended the Petition on October 31. (ECF No. 1 at ¶¶ 132-34.)

1B01.1B1g(4). Although not emphasized by the parties in the current litigation, as described below the Board relied heavily on this fact in denying the *Ware II* Petition, which sought relief under § 1B01.1B1g(4).

Plaintiffs claim that despite the differences between *Ware I* and *Ware II*, specifically the different proposed buffer and setback measurements, People's Counsel—responding to local residents' opposition to the Church—incorrectly told the ALJ that *Ware II* sought the same relief as *Ware I*. (ECF No. 1 at ¶¶ 143-144.) On November 4, 2013, the ALJ dismissed the Petition without a hearing on the basis of *res judicata*. (*Id.* at ¶¶ 146-148.) Ware subsequently filed a Motion for Reconsideration, which the ALJ denied. (*Id.* at ¶ 150.) On January 9, 2014, Ware filed an appeal to the Board. (*Id.* at ¶ 151.) On February 4, 2014, People's Counsel filed a Motion to Dismiss the *Ware II* Petition on the basis of *res judicata*. (*Id.* at ¶ 152, 155.) The Board stayed the proceedings pending the Maryland Court of Special Appeal's decision. (*Id.* at ¶¶ 151, 153.)

On July 2, 2015, the Maryland Court of Special Appeals affirmed the Baltimore County Circuit Court's decision in *Ware I* by written opinion. (*Id.* at ¶ 126; *Ware v. People's Counsel for Baltimore County*, 223 Md. App. 669, 117 A.3d 628 (Md. Ct. Spec. App. 2015).) The court found substantial evidence in the record to support the Board's findings that the RTA restrictions applied to the Property and that Plaintiffs did not meet either of the two conditions required for a new church to be exempt from the RTA requirements. *Ware*, 223 Md. App. at 638 (citing BCZR § 1B01.1.B.1.g(6)). First, the site plan did not comply to the extent possible with the RTA use requirements given that it proposed no buffer and no setback between the parking lot and the eastern boundary of the Property. *Id.* Second, the

plan was not otherwise expected to be compatible with the character and general welfare of the surrounding residential premises. *Id.* at 686. In addition to the noise and traffic that the Church had allegedly caused, the court noted that other churches in the area are situated on larger lots and have sufficient space for parking. *Id.*

On November 30, 2016, counsel for Protestants adopted the People's Counsel's Motion to Dismiss the *Ware II* Petition. (ECF No. 1 at ¶¶ 152, 154.) Subsequently, on March 30, 2017, People's Counsel withdrew its Motion to Dismiss. (*Id.* at ¶ 155.) Because counsel for the Protestants had adopted the Motion, however, the Board held a hearing on the Motion on May 11, 2017. (*Id.* at ¶ 157.) On September 13, 2017, the Board granted the Motion to Dismiss. (*Id.* at ¶¶ 156-159.)

In the Board's Opinion granting the Motion to Dismiss, the Board stated that during the hearing, "[Ware] argued that, in *Ware I*, it was seeking an exception pursuant to BCZR § 1B01.1B1g(6) but in *Ware II*, was seeking an exception pursuant to BCZR § 1B01.1B1g(4)." (*Ware II* Opinion, ECF No. 10-2 at 574.) As described above, § 1B01.1B1g(4) applies to existing churches while § 1B01.1B1g(6) applies to new churches. (*Id.*) The Board then summarized the "real thrust of [Ware's] argument" as "*res judicata* is inapplicable because the second case, *Ware II*, is different from *Ware I* in that different sections of the Baltimore County Zoning Regulations apply." (*Id.*) The Board rejected this argument, explaining that:

> The facts in *Ware I* and *Ware II* concern the same Petitioner, regarding the same property, and same proposed conversion of a single-family residence into a church. . . . The only difference is that Petitioner, once denied in *Ware I* as a new church, wants a second bite as under the theory it is an existing church.

(*Id.* at 575.) Accordingly, the Board found that Plaintiffs' claims in *Ware II* were barred by *res*

*judicata* and relatedly collateral estoppel. (*Id.* at 576-78.)

Plaintiffs claim, however, that the County has permitted other applicants to file successive petitions without invoking *res judicata*. (ECF No. 1 at ¶ 165.) Further, Plaintiffs claim that throughout the process, they faced significant and hostile discrimination from neighbors of the Property and tremendous opposition based on their status as African immigrants and the nature of their ministry. (*Id.* at ¶¶ 166-169.) Since being notified in November of 2012 that the Property could not be used as a house of worship until brought into BCZR compliance, there have been no Church-related activities on the Property. (*Id.* at ¶¶ 63-64.) The Church now holds services in the homes of Ware and other congregants, and as a result has lost the ability to hold certain services, lost members, and lost financial contributions. (*Id.* at ¶¶ 65-75.) On October 13, 2017, Plaintiffs brought the instant action against Defendants Baltimore County, Maryland and the Board of Appeals of Baltimore County, stemming from the denial of the *Ware II* Petition.

## STANDARD OF REVIEW

Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment, implicating this Court's discretion under Federal Rule of Civil Procedure 12(d). Plaintiffs argue that this Court should not treat the Motion as one for Summary Judgment given that the Plaintiffs have not had an opportunity for discovery. (ECF No. 13 at 9; Rath Decl., ECF No. 13-1 at ¶ 4.) "Generally speaking, 'summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986)). "[T]o

justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Hart v. Lew*, 973 F.Supp.2d 561, 573 (D. Md. 2013) (quoting *Nguyen v. CNACorp.*, 44 F.3d 234, 242 (4th Cir. 1995)). Plaintiffs attached the Declaration of Sieglinde K. Rath, counsel for Plaintiffs, who indicates various areas of inquiry for discovery. (ECF No. 13-1 at ¶ 8.) Given the facts identified, this Court does not convert the Motion to one for Summary Judgment, but proceeds construing Defendants' Motion as a Motion to Dismiss.

A motion to dismiss for failure to state a claim is governed by Rule 12(b)(6), which authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to Rule 8(a)(2)'s pleading requirements, which provide that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

Under limited exceptions, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). A court may properly consider

documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . ." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). A court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166-67 (citations omitted). A document is integral when it "by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Foundation, Inc. v. Severstal Sparrows Point, LLC*, 794 F.Supp.2d 602, 611 (D. Md. 2011) (citation omitted). Finally, a court may also consider matters of public record when ruling on a 12(b)(6) motion. *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 587, 607 (4th Cir. 2015). Defendants submitted documents comprising the public record of Plaintiffs' zoning petitions, without objection from Plaintiffs. Accordingly, this Court will consider these documents as matters of public record and integral to the Complaint.

## ANALYSIS

Defendants move to dismiss all of Plaintiffs' claims on multiple grounds, many of which Judge Hollander of this Court addressed in an exhaustive opinion in *Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017): (1) whether this Court should abstain from deciding this action under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); (2) whether Plaintiffs were required to exhaust administrative remedies as to *Ware II*; (3) whether Plaintiffs' claims are barred by the doctrines of *res judicata* and collateral estoppel; (4) whether Plaintiffs have failed to state claims under RLUIPA and 42 U.S.C. § 1983; and (5) whether this Court should exercise

supplemental jurisdiction over Plaintiffs' state constitutional claim and request for review of the Board's Opinion and Order.

In *Hunt Valley*, Judge Hollander reached the merits of the plaintiff Hunt Valley Baptist Church's claims and held that the church, seeking to accommodate its 500 congregants by building a church on a property located on a major road and next door to another church, had stated claims under RLUIPA's substantial burden and nondiscrimination provisions and under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments. While as described below, this Court also addresses Plaintiffs' RLUIPA and § 1983 claims on the merits, Plaintiffs have not pled that the Board's denial of their second attempt to convert the same single-dwelling home located in a residential neighborhood into a house of worship was either an intentional or subtle form of discrimination required to state a claim under RLUIPA or § 1983.

## A. *Burford* abstention

As in the *Hunt Valley* case, Defendants assert that this Court should abstain from hearing this case under the doctrine articulated by the United States Supreme Court in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). As this Court has held, however, in *Reaching Hearts Int'l., Inc. v. Prince George's County*, 584 F.Supp.2d 766, at 792 (D. Md. 2008), and more recently in *Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017), *Burford* abstention is inappropriate in RLUIPA cases.

Under the *Burford* abstention doctrine, a federal district court may abstain from exercising its jurisdiction "when federal adjudication would unduly intrude upon complex state administrative processes because . . . federal review would disrupt state efforts to

establish a coherent policy with respect to a matter of substantial public concern." *Martin v. Stewart*, 499 F.3d 360, 364 (4th Cir. 2007). There is no "formulaic test for determining when dismissal under *Burford* is appropriate." *First Penn-Pacific Life Ins. Co. v. Evans*, 304 F.3d 345, 348 (4th Cir. 2002). However, after weighing "the federal interests in retaining jurisdiction over the dispute and the competing concern for the independence of state action," a district court may abstain where "the State's interests are paramount and . . . a dispute would best be adjudicated in a state forum." *Id.* (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotation marks omitted)).

Defendants argue that the United States Court of Appeals for the Fourth Circuit holds that *Burford* abstention applies to cases involving questions of state and local land use and zoning. (ECF No. 10-1 at 32-33.) However, the Fourth Circuit has explained that:

> "[I]n cases in which plaintiffs' federal claims stem *solely* from construction of state or local land use or zoning law, *not involving* the constitutional validity of the same and absent exceptional circumstances . . ., the district courts should abstain under the *Burford* doctrine to avoid interference with the State's or locality's land use policy."

*MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269, 282 (4th Cir. 2008) (quoting *Pomponio v. Fauquier County Board of Supervisors*, 21 F.3d 1319, 1328 (4th Cir. 1999)) (emphasis added). Unlike cases where plaintiffs' state law claims predominate over constitutional claims,[5] this Court has held that *Burford* abstention is inappropriate in RLUIPA cases. *See Reaching Hearts Int'l., Inc. v. Prince George's County*, 584 F.Supp.2d 766, at 792 (D. Md. 2008)

---

[5] *See MLC Automotive, LLC v. Town of Southern Pines*, 532 F.3d 269, 282 (4th Cir. 2008) (denying *Burford* abstention when the plaintiff's "sole federal claim is entirely dependent upon resolution of its state law claim in its favor"); *see also Pomponio v. Fauquier County Board of Supervisors*, 21 F.3d 1319, 1326 (4th Cir. 1999), *overruled in part on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ("The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes, or laws that are the bases for the plaintiffs' federal claims.").

("*Burford* abstention does not apply in this case because this action did not fall within the narrow exception of federal jurisdiction, but rather is squarely within the province of the federal courts because the complaint raises important issues of religious discrimination."); *see also Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017). Accordingly, this Court will not abstain from hearing Plaintiffs' RLUIPA claims (Counts I, II) or claims seeking to vindicate constitutional rights (Counts IV, V, VII).[6]

Count IX, however, asks this Court to review the Board's September 13, 2017 Opinion and Order in *Ware II*. Unlike Plaintiffs' other claims, this falls squarely into the class of cases where *Burford* abstention counsels this Court to not "sit[] as a zoning board of appeals." *Town of Southern Pines*, 532 F.3d at 282; *see also New Orleans Public Service, Inc. v. Council of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506 (1989) (explaining that *Burford* abstention applies "where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern'" (citations omitted)); *Hunt Valley*, 2017 WL 4801542, at *20. Therefore, this Court will abstain from considering Count IX and Count IX is DIMISSED.

**B. Exhaustion of administrative remedies**

Defendants argue that this Court should dismiss all of Plaintiffs' claims because Plaintiffs failed to exhaust their administrative remedies for the *Ware II* Petition. Defendants assert that the Board has primary and exclusive jurisdiction over zoning appeals, and therefore Plaintiffs were required to exhaust the same remedies pursued in *Ware I*: appealing

---

[6] As Plaintiffs' claim under Article 36 of the Maryland Declaration of Rights also seeks to vindicate certain protections for religious liberty, *Burford* abstention is also inappropriate for Count VII.

to the Circuit Court for Baltimore County and ultimately the Maryland Court of Special Appeals. (ECF No. 10-1 at 33-34.) As to Plaintiffs' claim for declaratory relief, Defendants assert "where, as here, there is a special statutory remedy for a specific type of case and that remedy is intended to be exclusive and primary, a party may not circumvent those special statutory proceeding by a declaratory judgment action." (*Id.* at 35 (citing *Sprenger v. Public Service Commission*, 400 Md. 1, 24, 926 A.2d 238 (Md. 2007).)

Beginning with Plaintiffs' RLUIPA claims, this Court and many others have held that exhaustion of state administrative remedies is not required under RLUIPA. *See Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542, at *21 (D. Md. Oct. 17, 2017) ("Nor is exhaustion required before pursuit of a claim under RLUIPA."); *see also Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 979 (9th Cir. 2011) (explaining that RLUIPA claims are ripe when there is finality, but not exhaustion of administrative remedies); *Dilaura v. Ann Arbor Charter Twp.*, No. 00-1846, 30 Fed. App'x 501, 507 (6th Cir. Feb. 25, 2002) ("[E]xhaustion of administrative remedies is not required for RLUIPA claims when brought as part of a § 1983 action.").[7]

As to Plaintiffs' § 1983 claims, the Supreme Court has held that a plaintiff need not exhaust state administrative remedies prior to bringing a § 1983 action. In *Patsy v. Board of Regents of Fla.,* 457 U.S. 496, 102 S.Ct. 2557 (1982), the Supreme Court held that based on § 1983's legislative history, "exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. at 516; *see also Porter v. Nussle*, 534 U.S. 516, 523, 122 S. Ct. 983 (2002) ("Ordinarily, plaintiffs pursuing civil rights

---

[7] The case Defendants rely on, *Prince George's County v. Ray's Used Cars*, 398 Md. 632, 922 A.2d 495 (Md. 2007), did not concern the First Amendment or RLUIPA.

claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court." (citing *Patsy,* 457 U.S. at 516)); *Sager v. Housing Commission of Anne Arundel County*, 855 F.Supp.2d 524, 551 (D. Md. 2012) (explaining that the "general rule" is that "plaintiffs proceeding under § 1983 need not exhaust state administrative remedies before filing suit") (internal citations omitted). Accordingly, while the Plaintiffs could have pursued the same appellate process as in *Ware I*, they were not required to do so before filing suit in this Court.

### C. *Res judicata* and collateral estoppel

Defendants argue that all of Plaintiffs' claims are barred under the doctrines of *res judicata* and collateral estoppel. In Maryland, *res judicata* "bars a party from re-litigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir. 2008) (citing *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)). This judge-made doctrine of *res judicata* serves "to promote judicial efficiency and foster reliance on adjudications by putting an end to a cause of action once litigated." *United States v. Tatum*, 943 F.2d 370, 381 (4th Cir. 1991); *see also Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597 (1948) (res judicata is "judicial in origin"). In *Batson v. Shiflett*, 325 Md. 684, 705, 602 A.2d 1191 (Md. 1992), the Maryland Court of Appeals stated:

> Whether an administrative agency's declaration should be given preclusive effect hinges on three factors: (1) whether the [agency] was acting in a judicial capacity; (2) whether the issue presented to the [reviewing] court was actually litigated before the [agency]; and (3) whether its resolution was necessary to the [agency's] decision.

(internal quotation marks omitted.) In *Whittle v. Board of Zoning Appeals*, 211 Md. 36, 38, 125 A.2d 41 (1956), the Maryland Court of Appeals explained that if a "second suit is between

the same parties and is upon the same cause of action, a judgment in the earlier case on the merits is an absolute bar, not only as to all matters which were litigated in the earlier case, but as to all matters which could have been litigated." In the context of successive zoning applications, the *Whittle* court explained that:

> The general rule . . . [is that] a zoning appeals board may consider and act upon a new application for a special permit previously denied, but that it may properly grant such a permit only if there has been a *substantial change in conditions*. . . . It is our view that where the facts are subject to changes which might reasonably lead to an opposite result from that arrived at in an earlier case, and if there have been *substantial changes in fact and circumstances* between the first case and the second, the doctrine of *res judicata* would not prevent the granting of the special permit sought.

192 Md. App. at 45, 125 A.2d 41 (emphasis added).

The Defendants rely heavily on the Board's September 13, 2017 Opinion and Order dismissing Plaintiffs' *Ware II* Petition on both grounds. At the outset, this Court notes that the facts and arguments presented before this Court in Plaintiffs' Complaint and the parties' submissions do not mirror those which the Board addressed in its Opinion. Specifically, while the Board's Opinion depends heavily on the fact that during the hearing Ware relied *solely* on BCZR § 1B01.1B1g(4) for "existing churches" rather than BCZR § 1B01.1B1g(6) for "new churches," nowhere in the record before this Court do the parties emphasize—let alone rely on—this distinction. Rather, Plaintiffs assert that *res judicata* does not apply because the *Ware II* Petition specifically addresses, by offering new setback and buffer measurements, exactly what the Board, Circuit Court for Baltimore County, and Maryland Court of Special Appeals identified as problems with the *Ware I* Petition under BCZR § 1B01.1B1g(6) for new churches. Aside from citing the Board's Opinion, Defendants' submissions do not dispute Plaintiffs' assertion that they are relying on the same zoning

regulation as in *Ware I*.

The parties dispute whether there were "substantial changes in fact and circumstances" between *Ware I* and *Ware II*. Plaintiffs assert that *Ware II* "address[es] exactly those issues identified by the Board which resulted in its previous denial" in *Ware I*. (ECF No. 13 at 19.) Specifically, as described above, the Maryland Court of Special Appeals affirmed the Board's determination that Plaintiffs did not meet either of the two conditions required for a new church to be exempt from the RTA requirements. *Ware v. People's Counsel for Baltimore County*, 223 Md.App. 669, 685-87, 117 A.3d 628 (Md. Ct. Spec. App. 2015). These two requirements are "the proposed improvements [being] planned in such a way that compliance, to the extent possible with RTA use requirements, will be maintained" and the compatibility "with the character and general welfare of the surrounding residential premises." *Id.* at 685. Plaintiffs assert that *Ware II* completely or substantially complies with the BCZR's zoning requirements by proposing a setback and buffer and also not requesting parking variances. (ECF No. 13 at 19-20; ECF No. 1 at ¶¶ 137-141.) Further, Plaintiffs assert that the new setback proposal significantly increases compatibility with the neighborhood.

Defendants assert, however, that "substantial changes in fact and circumstances" do not refer to changes in the zoning petitions themselves, but rather "changes in such things as the neighborhood, the parcel itself, or the zoning regulations at issue." (ECF No. 16 at 3.) Defendants rely on *Seminary Galleria, LLC v. Dulaney Valley Improvement Ass'n, Inc.*, 192 Md. App. 719, 995 A.2d 1068 (Md. Ct. Spec. App. 2010), in which the Maryland Court of Special Appeals reviewed previous opinions that referred to "change in the neighborhood of the property" and "change in circumstances in the neighborhood." *Id.* at 737-38 (citing *Woodlawn*

*Ass'n v. Board of County Com'rs*, 241 Md. 187, 216 A.2d 149 (Md. 1966); *The Chatham Corp. v. Beltram*, 243 Md. 138, 220 A.2d 589 (Md. 1966)). In *Seminary Galleria*, the petitioning party, the Seminary, sought retroactive approval of fourteen parking spaces in a galleria building complex. After the petition for approval was denied, the Seminary submitted a second petition, arguing that *res judicata* did not bar the second petition because there was a substantial change in facts and circumstances: the second petition reclassified the property as a "shopping center" based on its tenant mix. Based on this new zoning classification, the Seminary asserted that the same petition for parking spaces, on a second review, should be approved.[8] The Maryland Court of Appeals rejected this argument, finding that *res judicata* barred the second petition because the tenant mix remained substantially the same between the first and second petition. Therefore, evidence to support classifying the property as a shopping center was available to the Seminary during the first petition.

Defendants rely heavily on the court's determination that the tenant mix remained substantially the same between the two petitions to mean that the relevant inquiry is *only* whether circumstances outside of a petition substantially change. (ECF No. 16 at 4-5.)[9] However, this Court in *Reaching Hearts Int'l, Inc. v. Prince George's Cty.*, 584 F.Supp.2d 766, 794 (D. Md. 2008), *aff'd,* 368 Fed. App'x 370 (4th Cir. 2010), addressed the issue of *res judicata* when a party's proposed site plan changed. In *Reaching Hearts*, the plaintiff RHI, attempting

---

[8] Specifically, the complex was only required to have 728 parking spaces under the initial classification, and when the Seminary added the parking spaces, it already had 734. The new classification of "shopping center," however, required 1,000 spaces. Accordingly, the Seminary argued in the second petition that the additional spaces helped the Seminary come into compliance with the zoning regulations.

[9] The other case Defendants rely on, *The Chatham Corp. v. Beltram*, 243 Md. 138, 220 A.2d 589 (Md. 1966), also involved two identical petitions relying on a change of outside circumstances. *See id.* at 151 (applying *res judicata* when "the report and recommendation of the Planning Commission was a recapitulation of the report and recommendation which had been submitted, considered and rejected by the Board at the first hearing").

to build a church, submitted an application for part of its property to undergo a water and sewer category change. *Id.* at 774-75. The application was denied, in addition to a subsequent subdivision application and second water and sewer category change application. *Id.* at 775-79. RHI then filed suit in this Court, alleging violations of the Fourteenth Amendment's Equal Protection Clause and RLUIPA. *Id.* at 780. At trial, RHI presented a third proposed water and sewer category change application. *Id.* at 794. After a seven day trial, a jury found that the county defendant's laws, regulations or administrative actions (1) were motivated at least in part on the basis of religious discrimination, and (2) imposed a substantial burden on RHI's exercise of religion. *Id.* at 780. On their renewed motion for judgment as a matter of law, the county defendants argued *res judicata* and collateral estoppel barred RHI's claims. Denying these arguments for the third time,[10] this Court explained:

> Simply put, *res judicata* and collateral estoppel cannot apply to bar RHI's relief on a new application because the claims and/or issues resolved in the prior state cases are not "identical" to the application that it seeks to file; the size of the church's footprint, the parking, the percentage of lot coverage, the required extension of the sewer line and the water hook-up are all different from the specifications of RHI's developments submitted in conjunction with prior applications. . . . The 2003 water and sewer category change application sought an upgrade for the back 3.6 acres of the front parcel *plus* the entire 10.04 acres of the rear parcel, the subdivision application sought to combine both parcels into one, and the 2005 water and sewer category change application sought an upgrade of the category 5 land on the front *and* rear parcels; to the contrary, the proposed plan presented at trial seeks *only* a water and sewer category change of the front portion of the front parcel.

*Id.* at 794 (emphasis in original). Denying the motion as a whole, this Court ultimately ordered that the defendants review and process RHI's water and sewer category change application. *Id.* at 795.

---

[10] This Court had previously denied the arguments at the motion to dismiss and motion for summary judgment stage. *Reaching Hearts*, 584 F.Supp.2d at 792.

Like in *Reaching Hearts*, the Complaint asserts that *Ware II* proposes a different site plan than *Ware I*. Specifically, *Ware II* proposes a 50-foot buffer and setbacks to the north, east, and west that either completely or substantially comply with the zoning requirements of the BCZR. (ECF No. 1 at ¶¶ 138-141.) These changes in *Ware II* prevent *res judicata* from barring Plaintiffs' claims. *See Reaching Hearts*, 584 F.Supp.2d; *see also Hilltop Terrace Homeowner's Ass'n v. Island Cty.*, 126 Wash.2d 22, 33–34 (Wash. 1995) (finding *res judicata* did not bar a second application because it "substituted a fundamentally different kind of structure, completely rerouted the access road to the site, significantly increased setbacks, and changed the number and kind of antennae" and accordingly "these changes in both design and function in the second application together constitute 'a substantial change in the application'"); *Gunn v. Bd. of Cty. Comm'rs, Dade Cty.*, 481 So.2d 95, 96 (Fla. Dist. Ct. App. 1986) (affirming a commission's decision that *res judicata* did not bar a successive petition when "the rearrangement of the field, which arguably reduced the noise and inconvenience to the neighboring homes, was a meaningful alteration of the proposal it had previously rejected"); *Ranney v. Board of Appeals of Nantucket*, 11 Mass.App.Ct. 112, 117, 414 N.E.2d 373 (Mass. App. Ct. 1981); *Hurley v. Zoning Board of Appeals of Village of Amityville,* 893 N.Y.S.2d 277, 278-79 (N.Y. App. Div. 2010).

For the same reason, collateral estoppel also does not bar Plaintiffs' claims. "'Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006) (quoting *Montana v. United States*, 440 U.S. 147, 153, 99

S.Ct. 970 (1979)). Further, "findings of fact made during administrative adjudications are to be accorded the same collateral estoppel effect they would receive if made by a court." *Id.* (citing *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997)). A party seeking to invoke collateral estoppel must establish five elements:

> (1) [T]hat "the issue sought to be precluded is identical to one previously litigated" (element one); (2) that the issue was actually determined in the prior proceeding (element two); (3) that the issue's determination was "a critical and necessary part of the decision in the prior proceeding" (element three); (4) that the prior judgment is final and valid (element four); and (5) that the party against whom collateral estoppel is asserted "had a full and fair opportunity to litigate the issue in the previous forum" (element five).

*Id.* (quoting *Sedlack v. Braswell Servs. Group Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)). As described above, the issues Defendants seek to preclude in *Ware II* are not identical to the issues previously litigated in *Ware I*. According to the facts before this Court, *Ware II* asks the Board to consider whether the *Ware II* site plan, offering different buffer and setback measurements, meets the two conditions required for a new church to be exempt from the RTA requirements. Accordingly, collateral estoppel does not bar Plaintiffs' claims. *See Reaching Hearts*, 584 F.Supp.2d at 794-95.

### D. Plaintiffs' RLUIPA and § 1983 claims

Plaintiffs bring claims under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* (Counts I, II), and related claims under 42 U.S.C. § 1983 for violations of the First and Fourteenth Amendments (Counts IV, VI).[11]

---

[11] Section 1983 provides that "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .." Because § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred,'" this Court analyzes Plaintiffs' § 1983 claims as asserting violations of the

As Judge Hollander noted in an exhaustive summary of the history of RLUIPA in *Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017), RLUIPA's origin can be traced back to the Supreme Court's Free Exercise Clause of the First Amendment jurisprudence. Initially when evaluating whether challenged government actions violated the Free Exercise Clause, the Court employed a "balancing test". *Burwell v. Hobby Lobby Stores, Inc.*, __U.S.__, 134 S.Ct. 2751, 2760 (2014) (citing *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526 (1972)). This test "took into account whether the challenged action imposed a substantial burden on the practice of religion, and if it did, whether it was needed to serve a compelling interest." *Id.* The Supreme Court subsequently rejected this test in *Employment Div., Dept. of Human Resource of Ore. v. Smith*, 494 U.S. 872, 110 S.Ct. 1595 (1990), holding that the government could apply neutral, generally applicable laws to religious practices even *without* showing a compelling interest.

In response to the ruling in *Smith*, Congress passed the Religious Freedom Restoration Act of 1993 ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*. RFRA required that even if the burden on an individual's exercise of religion was the result of a rule of general applicability, the Government needed to demonstrate that the application of the burden was in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest. § 2000bb-1(a),(b). Four years later, the Supreme Court determined that Congress exceeded its powers by applying RFRA to states and localities under Section 5 of the Fourteenth Amendment. *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157 (1997).

First and Fourteenth Amendments. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689 (1979)).

Following the Court's decision in *City of Boerne*, Congress enacted RLUIPA under the Spending and Commerce Clauses in 2010. *Holt v. Hobbs*, __ U.S. __, 135 S.Ct. 853, 860 (2015). While RLUIPA offers legitimate protections to religious exercise in the context of land use, the Fourth Circuit has noted that "the language of RLUIPA demonstrates that Congress did not intend for RLUIPA to undermine the legitimate role of local governments in enacting and implementing land use regulations." *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 516 (4th Cir. 2016).

Plaintiffs bring claims under RLUIPA's "substantial burden" and "nondiscrimination" provisions. As Plaintiffs' acknowledge in their Response to the Motion to Dismiss, their substantial burden claim under § 2000cc(a) is intricately related to their First Amendment Free Exercise claim, and their nondiscrimination claim under § 2000cc(b)(2) is intricately related to their Fourteenth Amendment Equal Protection claim. Accordingly, this Court will address Counts I and IV together before proceeding to Counts II and VI.[12]

### i. RLUIPA Substantial Burden (Count I) and First Amendment Free Exercise (Count IV) claims

Plaintiffs' first claim under RLUIPA is that Defendants implemented land use regulations in a manner placing a substantial burden on their religious exercise in violation of § 2000cc(a). The substantial burden provision of RLUIPA states:

---

[12] Additionally, at the outset this Court notes that RLUIPA's provisions grant various protections against a government's "impos[ition] or implement[ation of] a land use regulation." 42 U.S.C. §§ 2000cc(a)(1), (b)(1-2). Plaintiffs' Response to the Motion to Dismiss clarifies that Plaintiffs do not challenge any of the BCZR themselves or the Board's denial of the *Ware I* Petition. Rather, Plaintiffs claim that the Board "implemented" its regulations in a way that violated RLUIPA by denying the *Ware II* Petition on the basis of *res judicata*. Defendants have not raised the issue of whether such a denial constitutes "imposing or implementing a land use regulation." Further, Plaintiffs raise both RLUIPA and federal constitutional claims. Accordingly, this Court assumes without deciding that denying a petition on the legal basis of *res judicata* in this case may constitute "imposing or implementing a land use regulation."

> No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—
>
>> (A) is in furtherance of a compelling governmental interest; and
>> (B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc(a)(1). The goal of the substantial burden provision is to "'combat[] subtle forms of discrimination by land use authorities that may occur when a state delegates essentially standardless discretion to nonprofessionals operating without procedural safeguards.'" *Hunt Valley*, 2017 WL 4801542 at *44 (quoting *Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 196 (2d Cir. 2014) (internal citations omitted)). While RLUIPA does not define substantial burden, the Fourth Circuit has defined it consistent with the Free Exercise Clause of the First Amendment as "when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006).

The Fourth Circuit has emphasized that "a critical function of RLUIPA's substantial burden restriction is to protect a plaintiff's *reasonable expectation* to use real property for religious purposes." *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 515 (4th Cir. 2016) (citation omitted) (emphasis added); *see also Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548, 557 (4th Cir. 2013) ("When a religious organization buys property reasonably expecting to build a church, governmental action impeding the building of that church may impose a substantial burden."); *Reaching Hearts Int'l.*, 584 F.Supp.2d 766, 786 (D. Md. 2008), *aff'd*, 368 Fed. App'x 370 (4th Cir. 2010) (affirming the jury's finding of

substantial burden because the plaintiffs had reasonably expected to build a church on the property when they invested hundreds of thousands of dollars into application processes); *Hunt Valley*, 2017 WL 4801542 at *28 (concluding that the plaintiff stated a substantial burden claim when it "plausibly alleged that it had a reasonable expectation that it could build a house of worship on the [p]roperty if it satisfied the conditions"); *United States v. County of Culpeper, Virginia*, 245 F.Supp.3d 758, 769 n. 8 (W.D. Va. 2017) ("In fact, the [plaintiff] had a reasonable expectation that it could use the land for religious purposes.") Accordingly, the relevant inquiry is whether, at the time she bought the Property, Reverend Ware had a reasonable expectation of using the Property as a house of worship for the Church.

Plaintiffs have not plausibly pled a substantial burden claim because the record shows that Reverend Ware did *not* have a reasonable expectation when she bought the Property that it could be used for the Church. When Ware identified the Property, it was a single-family dwelling located in a residential neighborhood. The only information Ware had concerning turning the home into a church was the realtor telling her that a church was a permitted use on the Property. (Compl., ECF No. 1 at ¶¶ 37-38.) If any member of the Church had looked into the zoning regulations, they would have learned that although a church is a use "permitted as of right" in the Property's zone, it still must comply with the dwelling-type and other supplementary use restrictions. BCZR §§ 1B01.1.A, B. Rather than reviewing the zoning regulations, Ware converted three of the home's rooms into a worship area, created a new, gravel parking area lined by newly planted trees, and held a service, cookout and party. (*Id.* at ¶¶ 54-61.) Then, when told that the Property could not be used as

a church until it complied with the BCZR, she proposed a site plan that contained no buffer or setback areas despite the 50 and 75 feet requirements.

RLUIPA does not "grant[] an automatic exception to religious organizations from generally applicable land use regulations." *Andon, LLC v. City of Newport News, Va.*, 813 F.3d 510, 516 (4th Cir. 2016). Plaintiffs' failure to exercise due-diligence before acquiring and altering the Property, and subsequent proposal of a site plan that disregarded the zoning requirements, show that Plaintiffs did not have a reasonable expectation at the time Ware bought the Property that it could be used for the Church. In the *Andon* case, the Fourth Circuit noted that any "alleged burdens" were "self-imposed hardships." 813 F.3d at 515 (citing *Petra Presbyterian Church v. Vill. Of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007)). Specifically, the Fourth Circuit noted that the "plaintiffs knowingly entered into a contingent lease agreement for a non-conforming property" and that any problems which they sustained "were not imposed by the [defendant's] action denying the variance, but were self-imposed hardships." *Id.* In this case, Ware created her own hardship by the failure to exercise even minimum due-diligence. This is in contrast with the evidence ultimately presented at trial in *Reaching Hearts*. In the *Reaching Hearts* case, the plaintiffs' "expectations . . . were reasonable given the then-current state of the law and the track record of the agencies that would be reviewing its application." 584 F.Supp.2d at 786.

Plaintiffs also argue that they have suffered "delay, uncertainty, and expense" because "it took Plaintiffs four years to search for a property that would meet its needs . . . and now the Defendants without justification are forcing the Plaintiffs [to] begin anew." (ECF No. 13 at 25.) While a substantial burden can be found where there has been delay, uncertainty, and

expense, *Bethel*, 706 F.3d at 557, this burden was also self-imposed. Plaintiffs failed to examine the zoning regulations before buying the Property or beginning improvements. Then, when apprised of the BCZR, Plaintiffs submitted a site plan that the Board, affirmed by both the Circuit Court for Baltimore County and the Maryland Court of Special Appeals, found did not minimally comply to the extent possible with the RTA requirements. *See Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n*, 768 F.3d 183, 196 (2d Cir. 2014) (explaining that one factor the district court should consider on remand is "whether the [the plaintiff] reasonably believed it would be permitted to undertake its proposed modifications when it purchased the property at 85 West Street").

Turning to Plaintiffs' Free Exercise claim, the First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. CONST. AMEND I. "Under the Free Exercise Clause, 'a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'" *Bethel*, 706 F.3d at 561 (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. 520, 531, 113 S.Ct. 2217 (1993)). Clearly, the doctrines of *res judicata* and collateral estoppel are neutral laws of general applicability, and as described above, Plaintiffs have not alleged that the Board's invocations of these doctrines were asserted to burden the Church. Rather, the Board denied Plaintiffs' site plan because it did not minimally comply to the extent possible with the RTA requirements and as a result was not compatible with the general welfare of the neighborhood. Congress did not enact RLUIPA "to undermine the legitimate role of local governments in enacting and implementing land use regulations." *Andon*, 813 F.3d at 516.

Accordingly, Plaintiffs have failed to allege claims under RLUIPA's substantial burden provision (Count I) or the Free Exercise Clause of the First Amendment (Count IV) and these claims are DISMISSED.

### ii. RLUIPA Nondiscrimination (Count II) and Fourteenth Amendment Equal Protection (Count VI) claims

Plaintiffs' second claim under RLUIPA is that Defendants implemented land use regulations in a manner that discriminates against them on the basis of their religion and religious denomination in violation of §2000cc(b)(2). The nondiscrimination provision states that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious discrimination." 42 U.S.C. § 2000cc(b)(1). Unlike a substantial burden claim, to establish a claim under RLUIPA's nondiscrimination provision a plaintiff must show evidence of discriminatory intent. *Hunt Valley*, 2017 WL 4801542, at *29 (citing *Chabad Lubavitch of Litchfield County, Inc. v. Litchfield Historic Dist. Com'n*, 768 F.3d 183, 198 (2d Cir. 2014)). "This discrimination can be demonstrated through a facially discriminatory act, or by providing extrinsic evidence such that a discriminatory system designed to favor one class over another can be inferred from the circumstances." *Reaching Hearts*, 584 F.Supp. at 781 (citing *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 819 (4th Cir. 1995)). The Fourth Circuit has identified several factors for evaluating whether a decisionmaking body was motivated by discriminatory intent, including (1) evidence of a "consistent pattern" of the decisionmaking body disparately impacting members of a particular class, (2) historical background of the decision, (3) the sequence of events leading up to the particular decision, and (4) contemporary statements made by the decisionmakers. *Sylvia*, 48 F.3d at 819.

The BCZR, and specifically the "[d]welling-type and other supplementary use restrictions" are facially neutral: they do not only apply to churches, but rather all permitted uses in a D.R. zone. Plaintiffs assert, however, that the Board "implemented" its regulations to prohibit the Plaintiffs from using the Property for the Church and "adopted" the *res judicata* argument make by the local residents who exhibited discriminatory animus. (ECF No. 13 at 26-27.) Specifically, Plaintiffs argue that it was ultimately the Protestants' motion to dismiss that the Board granted and the Protestants openly opposed the Church.

Plaintiffs do not allege unequal treatment for similarly situated churches let alone allege that such treatment was the result of intentional or purposeful discrimination. *Hunt Valley*, 2017 WL 4801542, at *30 (citing *Sylvia Dev. Corp.*, 48 F.3d at 819; *Reaching Hearts*, 594 F.Supp.2d at 781). First, as the Maryland Court of Special Appeals recognized, the other churches Plaintiffs assert the Board approved in the same residential area are situated on larger lots and have sufficient space for parking. *Ware*, 223 Md. App. at 686, 117 A.3d 628. Accordingly, they are not similarly situated. Second, Plaintiffs have not alleged facts supporting an inference that the Board acted with intentional or purposeful discrimination. The Board held a hearing on the motion to dismiss and subsequently issued a written opinion explaining its finding that *res judicata* and collateral estoppel apply. As explained above, the Board relied on *Ware II*'s invocation of the "existing church" exception, which was not invoked by *Ware I*. Plaintiffs do not address or dispute the Board's emphasis on the fact that *Ware II* sought the additional relief under the existing church exception. As the Maryland Court of Special Appeals held in *Seminary Galleria, LLC v. Dulaney Valley Improvement Ass'n, Inc.*, 192 Md. App. 719, 995 A.2d 1068 (Md. Ct. Spec. App. 2010), arguing

that a second, identical petition should be approved under a different zoning regulation is the type of argument that the doctrine of *res judicata* bars. Accordingly, Plaintiffs do not allege sufficient facts to reasonably infer that the Board denied their Petition because of their religion.

As Plaintiffs acknowledge, a Fourteenth Amendment Equal Protection claim mirrors a RLUIPA nondiscrimination claim. (ECF No. 13 at 26.) The Equal Protection Clause of the Fourteenth Amendment "limits all state action, prohibiting any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." U.S. CONST. AMEND XIV. Like a nondiscrimination claim, an equal protection claim also requires a showing of clear and intentional discrimination. *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 825 (4th Cir. 1995) (citing *Washington v. Davis*, 426 U.S. 229, 239, 96 S.Ct. 2040 (1976)); *Reaching Hearts*, 584 F.Supp.2d at 781. For the same reasons described above, Plaintiffs have not adequately alleged that the Board's decision in *Ware II* was motivated by hostility or animus toward the Church. Unlike in *Hunt Valley*, the Plaintiffs have not alleged that the Board approved special exceptions for similar churches or alleged any facts indicating that any members of the Board were influenced during their decisionmaking process. *See Hunt Valley*, 2017 WL 4801542 at *31 (noting that two Board members who voted to deny the plaintiffs' the special exception made comments concerning the size the proposed church and "[i]t's a church, but it's more than a church"). Accordingly, Plaintiffs have failed to allege claims under RLUIPA's nondiscrimination provision (Count II) or the Equal Protection Clause of the Fourteenth Amendment (Count VI) and these claims are DISMISSED.

### E. Article 36 of the Maryland Declaration of Rights claim (Count VII)

Finally, Plaintiffs bring a state constitutional claim under Article 36 of the Maryland Declaration of Rights (Count VII). This Court begins by noting that it is unsettled whether this Article provides a private cause of action. *See Booth v. Maryland*, No. 08-1748, 337 Fed. App'x. 301, 311 (4th Cir. July 21, 2009) ("Whether Article 36 of the Maryland Declaration of Rights provides a private cause of action is undecided."); *Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017) ("It does not appear that the question has been resolved by Maryland appellate courts in the time since *Booth* was decided."); *Wood v. Board of Education of Charles County*, No. GJH-16-0239, 2016 WL 8669913, at *11 (D. Md. Sept. 30, 2016) ("[I]t is not clear that there is a private right of action for damages under Article 36."). Maryland appellate courts have, however, decided cases under Article 36, assuming Article 36 and the First Amendment have the same effect. *See Booth*, 337 Fed. App'x. at 311 (citing *Stover v. Prince George's Cnty.*, 132 Md. App. 373, 389, 752 A.2d 686, 695 (2000); *Supermarkets Gen. Corp. v. State of Maryland*, 286 Md. 611, 625, 409 A.2d 250, 258 (1979)).

Article 36, titled "Freedom of religion," is Maryland's embodiment of the Free Exercise Clause of the First Amendment. *Archdiocese of Washington v. Moerson*, 399 Md. 637, 640-41, 925 A.2d 659 (Md. 2007); *Booth*, 337 Fed. App'x. at 311 (explaining that under Maryland law, "Article 36 and the First Amendment of the United States Constitution have the same effect" and Maryland state courts analyze them under the same requirements). This Article provides that "all persons are equally entitled to protection in their religious liberty; wherefore, no person ought by any law to be molested in his person or estate, on

account of his religious persuasion, or profession, or for his religious practice . . .." As the Maryland Court of Appeals has explained, this clause does not "provide 'a constitutional right to ignore neutral laws of general applicability,' even when such laws have, as an incidental effect, the burdening of a particular religious activity.'" *Archdiocese of Washington v. Moerson*, 399 Md. 637, 640, 925 A.2d 659 (Md. 2007) (quoting *City of Boerne v. Flores*, 521 U.S. 507, 513, 117 S.Ct. 2157 (1997)).

In this case, the state constitutional claim asserted stems from the same facts as the federal constitutional claims: the Board's dismissal of the Church's petition. For the reasons stated above, Plaintiffs have not alleged that the Board discriminated against them on the basis of religion by denying *Ware I* or *Ware II*. In light of the fact that this Court has dismissed the federal claims in this case, there is no need for this Court to exercise supplemental jurisdiction over the state constitutional claim. *See Gunsay v. Mozayeni*, No. 16-1131, 695 Fed. App'x. 696, 703 (4th Cir. June 21, 2017) ("When coupled with the fact that the district court properly dismissed Plaintiffs' federal claims that served as the basis of the court's original jurisdiction, . . . [there is an] adequate basis for the district court to exercise its discretion to decline to retain jurisdiction over Plaintiffs' state-law claims."); *see also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("In particular, a court has discretion to dismiss or keep a case when it has dismissed all claims over which it has original jurisdiction." (citing 28 U.S.C. § 1367(c)(3))). This is particularly true in this case in light of the unsettled state of Maryland law with respect to a private cause of action under Article 36 of the Maryland Declaration of Rights. *Hunt Valley Baptist Church, Inc. v. Baltimore County Maryland, et al.*, No. ELH-17-804, 2017 WL 4801542 (D. Md. Oct. 17, 2017) (collecting

cases). Accordingly, this Court in the exercise of its discretion declines to retain jurisdiction over this state law claim, and Count VII is DISMISSED.

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment, construed as a Motion to Dismiss (ECF No. 10), is GRANTED and Plaintiffs' claims are DISMISSED.

A separate order follows.

Dated: March 27, 2018

_____/s/_____

Richard D. Bennett
United States District Judge
